## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

### No. 95-20398
_____


### JACK LUCIOUS, JR.,

**Petitioner-Appellant,**

**versus**

### GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

**Respondent-Appellee.**

---

**Appeal from the United States District Court
for the Southern District of Texas
(CA-H-94-377)**

---

April 29, 1997

Before REYNALDO G. GARZA, JONES, and DeMOSS, Circuit Judges.[*]

EDITH H. JONES, Circuit Judge:

Appellant Jack Lucious appeals from the district court's denial of his request for

habeas relief. He seeks a writ of habeas corpus claiming that at his state trial for robbery, he was

---

[*]Pursuant to Local Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

denied his constitutional right to testify in his own behalf. He also complains that there is insufficient evidence to support his conviction. For the following reasons, we deny his request for habeas relief.

## I.  BACKGROUND AND PROCEDURAL HISTORY

### A.  Lucious's State Court Trial

On March 5, 1991, Lucious was tried for robbery. The State produced evidence that on the afternoon of October 23, 1990 in Houston, Texas, Consuela Aguirre was walking from work to a grocery store to purchase a money order. As she walked, she was pushed down from behind, and her purse was forcibly taken from her. The assailant then pushed Aguirre's head against the sidewalk, injuring her. Although Aguirre did not see her assailant's face, she did observe that he was a black man wearing a dark brown jacket, a cap, and light brown pants. Unsuccessfully, she chased her assailant on foot as he fled from the scene.

At about the time of the assault, Johnny Fisher was outside his house in the neighborhood in which Aguirre was robbed. He noticed a black man walking down the street wearing army green fatigue pants, a green t-shirt, and a green camouflage hunting hat. Having previously seen the man in the neighborhood and feeling that the man looked suspicious, Fisher continued to watch until he passed by Fisher's house. After the man passed his house, Fisher went back to working on his boat. Moments later, Fisher heard a dog barking. The same man he had just seen was sprinting down the street with a black object tucked under his arm. The man ran through a vacant lot, crouched down briefly behind some bushes, and then disappeared behind a house. Fisher then saw Aguirre pursuing the man and yelling that he had just taken her purse.

Fisher called the police and an ambulance to assist Aguirre. Within an hour, the police completed a report and left without apprehending Aguirre's assailant. The ambulance carried Aguirre to the hospital for treatment of her injuries.

After the police left, Fisher discovered Aguirre's purse in the bushes where he had earlier seen the assailant crouching. He called the police, and an officer arrived approximately fifteen minutes later. As Fisher was showing the officer the location of the purse, Fisher noticed the suspect walking toward them in a pair of flowery beach shorts and a blue t-shirt. Despite the man's change of clothing, Fisher identified the man as the one he had seen sprinting down the street after Aguirre's attack. Based on this information, the police arrested the suspect: Lucious.

Although it was discovered that $80 and a bank card were missing from Aguirre's recovered purse, the police never recovered the money. Neither did they find clothing matching the description of the assailant's clothing. No fingerprints were lifted from the recovered purse.

At trial, Lucious's appointed trial counsel called no defense witnesses. As the trial court began reading the charge to the jury, Lucious interrupted the proceedings, complaining that all of his motions to the court had been overruled. After the court fruitlessly instructed Lucious to remain silent and warned him that he would be removed from the courtroom if he did not remain silent, Lucious was escorted from the courtroom by the bailiff. On his way out the door, Lucious told the bailiff to inform his attorney that he wanted to testify on his own behalf. The bailiff fulfilled this request and gave a note to Lucious's counsel.

Although it is not clear from the record precisely when Lucious was allowed to return, the court permitted Lucious to be brought back into the courtroom before the court had completed

3

reading the charge. Lucious repeatedly interrupted the court during the reading of the charge, stating that he had never seen Aguirre before. The court ordered Lucious gagged. When Lucious stated that he would rather be removed than be gagged, he was once again escorted from the courtroom. As he was being removed this second time, Lucious again stated that he had never seen Aguirre before. Then he stated, "I want to take the witness stand." After Lucious left, the court instructed the jury to disregard any outbreaks that had occurred in the courtroom. The court proceeded with the reading of the charge and closing arguments and submitted the case to the jury that same day.

The next day the jury found Lucious guilty of robbery. After a punishment hearing at which the state presented evidence of Lucious's prior convictions, the jury sentenced Lucious, enhanced pursuant to TEX. PENAL CODE ANN. § 12.42(d), to life imprisonment.

### B. Lucious's Motions for New Trial

On March 26, 1991, Lucious filed a *pro se* motion for new trial complaining that his court-appointed attorney had "prejudiced the defense" by not allowing Lucious to testify. On April 5, 1991, Lucious's court-appointed trial attorney, Elijah Gooden, filed another motion for new trial complaining about the insufficiency of the evidence but not about the denial of Lucious's right to testify.[1]

The court held a hearing on both motions. At this hearing, Lucious was represented by his trial counsel, Gooden, as well as by Stanley Kirk, Lucious's court-appointed counsel for his appeal. The courtroom deputy testified that, while he was being removed from the courtroom the

---

[1]In fact, at the hearing on the Motions for New Trial, Gooden expressly did not adopt Lucious's *pro se* motion for new trial.

first time, Lucious had requested that the bailiff tell his lawyer that he wanted to testify. The bailiff relayed this request to Gooden.

Gooden testified that he and Lucious had had numerous discussions -- both before and during the trial -- regarding whether Lucious should testify. Together they had decided, in part because of Lucious's prior convictions and the weakness of the State's circumstantial evidence, that it would be best if Lucious did not take the stand. Gooden testified that Lucious had told him that he had been acquitted at a previous felony trial because he had chosen not to testify and he wanted to employ the same strategy here. Gooden concluded: "It was his decision not to testify. I at all times relevant thereto left it up to Mr. Jack Lucious to decide for himself whether he wanted to testify or not."

Lucious, contradicting Gooden's testimony, stated that he and Gooden did not reach a decision regarding whether Lucious would testify. Had Lucious been permitted to take the stand, he would have testified that (1) at the time of his arrest, he was on his way to his job, (2) he did not have clothes fitting the description of those worn by Aguirre's assailant, and (3) on the day of his arrest, a person whom he knew and for whom he was often mistaken was wearing clothing fitting the description of Aguirre's assailant.

Immediately following the close of evidence at the hearing and without making any factual findings, the state trial court denied Lucious's motion for new trial.

## C. Lucious's Direct Appeal

On direct appeal, Lucious asserted, *inter alia*, that the trial court erred in not permitting him to testify before the argument of counsel was begun in violation of TEX. CODE CRIM.

P. art. 36.02[2] and that his trial counsel was ineffective for not conveying to the court Lucious's

request to testify in his own behalf. *See Lucious v. State,* 828 S.W.2d 118, 120 (Tex. App.--Houston

[14th Dist.] 1992], no pet.); *see also* Lucious's appellate brief filed in state court at 15.

In affirming the judgment of the trial court, the state appellate court ruled that Lucious

"did not timely request that the court reopen the case nor did the court have any indication as to the

substance and materiality of appellant's testimony" at the time that a motion to reopen would have

been appropriate:

> In fact, the court did not learn of the nature of appellant's testimony until the hearing
> on the motion for new trial. At that point, the court could only have granted a new
> trial, not reopen the case. Appellant does not complain about the denial of his motion
> for new trial.

*Lucious,* 828 S.W.2d at 121. The court further denied Lucious's ineffectiveness claim, noting that

the evidence was undisputed that the decision regarding whether Lucious would testify was left up

to Lucious:

> In discussions with his attorney both before and during trial, appellant decided not to
> testify. . . . It appears from the record that trial counsel's actions were considered at
> length. In light of appellant's prior criminal record, advice that appellant not testify
> was certainly plausible trial strategy.

*Id.* at 123.

Lucious did not file a petition for discretionary review with the Texas Court of

Criminal Appeals.

---

[2]     TEX. CODE CRIM. P. ANN. art. 36.02 provides:

The court shall allow testimony to be introduced at any time before the argument of
a cause is concluded, if it appears that it is necessary to a due administration of
justice.

### D.  Lucious's Requests for State Habeas Relief

Lucious filed three *pro se* state applications for writ of habeas corpus challenging his conviction.  The Texas Court of Criminal Appeals denied his first writ because Lucious's direct appeal was pending.  *See Ex parte Lucious,* Application No. 6,031-03, at cover (Sept. 18, 1991). The two subsequent applications were denied without written order.  *See Ex parte Lucious,* Application No. 6,031-04, at cover (Dec. 9, 1992); *Ex parte Lucious,* Application No. 6,031-05, at cover (Dec. 15, 1993).

### E.  Lucious's Request for Federal Habeas Relief

Lucious then filed this application for writ of habeas corpus *pro se* in federal district court on February 4, 1994 complaining that (1) there was insufficient evidence to sustain his conviction, (2) the state trial court erred in not permitting him to testify before argument of counsel had begun, (3) he received ineffective assistance of counsel at his trial, (4) the state trial court erred in denying his *pro se* motion for new trial, and (5) he received ineffective assistance of counsel on direct appeal.  The district court ruled against Lucious on all of his claims and denied his petition. Because Lucious's complaint regarding the denial of his right to testify was couched in terms of an improper denial of a request to reopen his case, the district court did not discuss the scope of a constitutional right to testify.  Instead, the district court held that the state trial court had not erred in not permitting him to testify because the "decision to reopen a case after the close of evidence is within the discretion of the trial court" and the trial court had not abused its discretion.  In its discussion concerning the alleged ineffectiveness of his trial counsel and the fact that Gooden allegedly disregarded Lucious's wish to testify, the district court stated:

7

The state court of appeals found that before trial, Lucious had decided not to testify, in accordance with his lawyer's advice. The lawyer's advice was based on the fact that if Lucious did testify, his prior criminal record would have been placed before the jury during cross-examination. The state court concluded that this decision did not represent deficient performance. This court has no basis on which to find otherwise.

Regarding the ineffectiveness claim, the court also ruled that Lucious could not satisfy the *Strickland* prejudice prong: "Lucious could not show that a different decision by counsel would have altered the outcome of the trial."

Lucious timely filed a Notice of Appeal to this court. This court granted a certificate of probable case and appointed counsel for Lucious.

## F. Current Appeal From Denial of Lucious's Request for Federal Habeas Relief

Throughout the procedural history of this case, Lucious has raised the issue regarding his right to testify in terms of either (1) the court's failure to reopen his case or (2) an ineffectiveness of counsel claim. In this appellate court, Lucious was allowed by the grant of CPC to recharacterize his claim as a federal constitutional issue. He now asserts that the lower court erred in denying his request for habeas relief because (1) the state trial court ignored Lucious's express request to testify "thus depriving Lucious of his constitutional right to take the stand on his own behalf," and (2) Lucious received ineffective assistance of trial counsel who failed to obtain a "knowing, intelligent, and voluntary decision from Lucious regarding his desire to testify after Lucious expressed a desire to testify on the record in open court." The State has waived the exhaustion requirement.

## II. DISCUSSION

This court is barred from entertaining Lucious's constitutional claim because it foundered in the state courts based on independent and adequate state law grounds -- *i.e.,* Lucious's

8

failure timely to request that his case be reopened, pursuant to TEX. CODE CRIM. P. art. 36.02, so that he could testify. It is well-settled that the federal courts may not review on habeas a decision of a state court that rests on a state law ground that is "independent of the federal question and adequate to support the judgment." *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 2553 (1991)*; Moore v. Roberts,* 83 F.3d 699, 701 (5th Cir. 1996), *cert. denied,* ___ U.S. ___, 117 S.Ct. 772 (1997). "The independent and adequate state ground doctrine 'applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement.'" *Moore,* 83 F.3d at 701-02 (quoting *Coleman,* 501 U.S. at 729-30, 110 S.Ct. at 2554).

When the state court has "clearly and expressly" stated that its judgment rests on a state procedural bar, a presumption arises that the state court decision rests on independent and adequate state law grounds. *See Harris v. Reed,* 489 U.S. 255, 263 (1989). The petitioner may rebut this presumption by establishing that the procedural rule is not strictly or regularly followed by the state courts. *See Moore,* 83 F.3d at 702 (citing *Sones v. Hargett,* 61 F.3d 410, 416 (5th Cir. 1995)). However, even upon a finding that the procedural rule is regularly followed by the state courts, the petitioner may still prevail by demonstrating (1) cause for the procedural default and actual prejudice as a result of the alleged violation of federal law or (2) that failure to consider his claims will result in a fundamental miscarriage of justice. *See Coleman,* 501 U.S. at 750, 111 S.Ct. at 2565; *Moore,* 83 F.3d at 702.

In Lucious's case the Texas courts consistently and expressly ruled that Lucious did not timely request to reopen his case so that he could testify. *See* TEX. CODE CRIM. P. art. 36.02.

9

The trial transcript reveals that Lucious was being ejected from the courtroom for the second time during the jury charge when he blurted out a request to testify. Texas law does not require reopening the evidence after both sides have rested. Instead, the test is whether a judge abused his discretion in denying a motion to reopen. *See Yee v. State*, 790 S.W.2d 361, 362 (Tex. App. -- Houston [14th Dist.] 1990); *Lucious v. State*, 828 S.W.2d at 120-21. The criteria for reopening, including a description of the proffered testimony, were plainly not met by Lucious's outburst. As the Supreme Court has stated, "the right to present relevant testimony [*i.e.* the testimony of the accused] is not without limitation." *Rock v. Arkansas,* 483 U.S. 44, 55, 107 S.Ct. 2704, 2711 (1987). This right may bow to other legitimate state interests, such as controlling the presentation of evidence in a criminal trial. *See id.* at 55 & n.11 ("Numerous state procedural and evidentiary rules control the presentation of evidence and do not offend the defendant's right to testify.").

Perhaps because Lucious was instructed by this court to brief the denial of the constitutional right to testify, it did not seem necessary to show that this bar on mandatory reopening is not strictly or regularly followed by the Texas state courts. Such an effort would be futile in any event: the state courts that reviewed Lucious's claims consistently applied the procedural rule. It is not our function to review a state's interpretation of its own law. *See Moreno v. Estelle,* 717 F.2d 171, 179 (5th Cir. 1983), *cert. denied,* 466 U.S. 975 (1984). We, therefore, defer to the state courts' interpretation of this statute.

Lucious likewise cannot demonstrate cause for his procedural default. To demonstrate cause, Lucious must establish that something that cannot fairly be attributed to him impeded his efforts to comply with the procedural rule. *See Coleman,* 501 U.S. at 753, 111 S.Ct. at 2566; *Moore,*

10

83 F.3d at 704. The fact that Lucious's trial attorney did not timely request reopening of the evidence is not "something that cannot fairly be attributed to" Lucious, unless his attorney's actions constituted ineffective assistance of counsel:[3]

> '[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule. . . .
>
> Attorney ignorance or inadvertence is not "cause" because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must "bear the risk of attorney error." Attorney error that constitutes ineffective assistance of counsel is cause, however.

*Coleman,* 501 U.S. at 753-54, 111 S.Ct. at 2566-67 (quoting *Murray v. Carrier,* 477 U.S. 478, 488 (1986)) (citations omitted). Lucious never demonstrated that his attorney erred in failing to comply with TEX. CODE CRIM. P. art. 36.02; if anything, the state courts were persuaded by the attorney's testimony that as a matter of trial strategy he and Lucious decided Lucious should not take the stand.[4] Because no "cause" exists for the procedural default, we need not inquire into actual prejudice.

Lucious has not suggested that the failure to consider his claim will result in a fundamental miscarriage of justice. The class of such cases is "exceedingly narrow, resulting from 'extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" *Rodriguez v. Johnson,* 104 F.3d 694, 697 (5th Cir. 1997) (quoting *McClesky v. Zant,* 499 U.S. 467, 494, 111 S.Ct. 1454, 1470 (1991)). After a thorough review of the record,

---

[3]Lucious cannot demonstrate that his attorney's inaction constituted ineffective assistance of counsel. *See infra.*

[4]On direct appeal and after reviewing the proceedings that were held in the trial court to consider this very issue, the state appellate court determined that "[i]t is undisputed that the decision whether to testify was left up to [Lucious]," not his attorney. *See Lucious,* 828 S.W.2d at 122.

we are satisfied that the absence of Lucious's testimony at his trial did not result in the conviction of an innocent man.

Because Lucious's claim was dismissed on an independent and adequate state ground, "resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Coleman,* 501 U.S. at 729, 111 S.Ct. at 2554. In fact, the procedural history of this case emphasizes the fundamental wisdom of barring habeas review based on an independent and adequate state ground of decision. Contrary to Lucious's assertions, the state courts never addressed his constitutional complaint of denial of the right to testify because they could not find that issue preserved at trial. If this court were to reach the constitutional issue, we would be (1) giving Lucious a hearing beyond that to which he was entitled at state law; (2) deciding an issue which the state courts never had an opportunity to consider; and, potentially, (3) considering an award of relief broader than the Supreme Court could have permitted on direct review of the conviction. *See generally Coleman,* 501 U.S. at 730-32, 111 S.Ct. 2554-55. These presumptuous actions would ill suit a court bound by federalism and comity. For these reasons, federal habeas review of Lucious's claimed denial of the right to testify is barred.

Lucious also contends that his attorney was ineffective for not acceding to his belated request and insisting to the court that he testify. Lucious's claim of ineffective assistance of counsel necessarily fails. *See Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). In order to establish an ineffective assistance claim, the defendant must establish that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *See id.*

12

Each court that has reviewed Lucious's claim has determined -- and reasonably so -- that his attorney's decision not to call Lucious as a witness was plausible trial strategy. As Elijah Gooden, Lucious's trial counsel, testified at the hearing on the motion for new trial, in his professional judgment, the State's case against Lucious was weak -- for example, there were no eyewitnesses to the assault who could identify Lucious as Aguirre's attacker, Lucious's fingerprints were not lifted from the recovered purse, and no clothes matching the description of those worn by Aguirre's assailant were ever recovered. In fact, Gooden was of the opinion that the State's case was so weak that he chose not to put on any witnesses at all. His specific decision not to put Lucious on the stand was made after several consultations with Lucious during which Lucious made it clear to Gooden that he did not want to testify. Moreover, both Gooden and Lucious believed that placing Lucious on the stand would invite Lucious's prior criminal record to be exposed during cross-examination.

After consulting with his attorney and because of his experience of being acquitted after not testifying at an earlier felony trial, Lucious chose not to testify. Then after the close of evidence -- and apparently only after it appeared to him that things were not looking favorably to his case -- he changed his mind. Lucious's counsel testified that "he did not present a motion to reopen the case because throughout the trial [Lucious] expressed a desire not to testify in view of his prior felony convictions and his belief that the State would not be able to prove its case." *Lucious,* 828 S.W.2d at 121. Considering his interactions with Lucious both before and during the trial, this certainly was reasonable professional conduct. We agree with the state courts that Lucious's representation at his trial was not deficient; Lucious's claim of ineffective assistance of counsel

13

necessarily fails. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064 (to establish ineffectiveness claim, defendant must prove deficient performance of counsel *and* actual prejudice).

### III. CONCLUSION

Because application of the independent and adequate state ground doctrine is dispositive of Lucious's principal claim, we do not reach the applicability of the AEDPA or the merits of that claim. Lucious also complains that there was insufficient evidence to sustain his conviction. After a thorough review of the record and for essentially the same reasons cited by the district court in its opinion, we reject this contention. The judgment of the district court is **AFFIRMED**.